UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MANSOUR W. SAIKALY,<br><br>　　　　Petitioner,<br><br>　　v.<br><br>WARDEN D. SMITH,<br><br>　　　　Respondent. | 1:06 CV 0965 OWW WMW HC<br><br>FINDINGS AND RECOMMENDATIONS RE PETITION FOR WRIT OF HABEAS CORPUS |

Petitioner is a federal prisoner proceeding pro se with a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2241. The matter was referred to a United States Magistrate Judge pursuant to 28 U.S.C. § 636(b)(1)(B) and Local Rule 72-302.

**BACKGROUND**

Petitioner was convicted in 1998 in the Northern District of Ohio of one count of conspiring to possess and distribute cocaine and two counts of being a felon in possession of a firearm. Petitioner was sentenced to serve a 240 prison sentence and now has a projected release date of February 19, 2010.

This petition challenges the findings of two disciplinary hearing officers ("DHO's") at two separate hearings. The first took place on October 28, 1995, at the United States Prison in Lewisburg, Pennsylvania ("Lewisburg"). The second took place on August 11, 2005, at the

Federal Correctional Institution in McKean, Pennsylvania ("McKean"). At both hearings, the DHO's found that Petitioner had engaged in or encouraged a group demonstration.

The 1995 Incident

In opposition to the petition, Respondent provides the declaration of Robert J. Ballash, the Regional Discipline Hearing Administrator for the Western Region of the Federal Bureau of Prisons. In that declaration, Ballash discusses the 1995 incident, based on the documentation in Petitioner's central file. Copies of the documents are attached to his declaration. In his declaration, Ballash states the following.

In 1995, Petitioner was serving his sentence at Lewisburg. On October 25, 1995, a riot broke out at the prison.

The prison conducted an investigation into Petitioner's possible involvement in the riot. The investigation of Petitioner's conduct ended on October 26, 1995, at 6:00 p.m., and Petitioner was given a copy of the incident report at 9:25 p.m. the same day. Petitioner was read his rights and allowed to read the incident report. Petitioner responded by saying that the report was false, that he had not encouraged anyone to riot, that there had not been a riot in his cell block, that he worked in the chapel and liked his job, and that he was interested only in the World Series.

Petitioner was charged with encouraging others to riot, encouraging a work strike, and participating in a work strike. He asked to have a staff representative at the hearing that would determine his guilt or innocence and he was given one. Petitioner also asked that an inmate from the same cell block be called to testify that Petitioner did not encourage a riot.

The hearing took place before a DHO on October 28, 1995. The institution presented as evidence the incident report and memoranda detailing what happened during the riot of October 26, 1995. The DHO also relied upon confidential material that was not shown to Petitioner for the security of those who made the statements. In their statements, the people reported that they heard Petitioner urging people to riot. The DHO deemed this credible evidence because the riot Petitioner had allegedly encouraged actually happened.

Petitioner testified on his own behalf and denied having encouraged anyone else to riot. He argued that if the charges had been true, he would have been placed in restrictive custody

before the riot started instead of later. He said that in other incidents where inmates had encouraged disruptive behavior, they had been locked up immediately. Because the prison was still in total lockdown following the recent riot, Petitioner's witness was not allowed to appear in person, but rather was allowed to submit a written statement instead. In it, the witness stated that he did not know anything about Petitioner trying to keep anyone from working "or anything like that."

Based on this evidence, the DHO found that between October 20 and October 25, 1995, Petitioner had encouraged others to participate in a group demonstration. The DHO sanctioned him by removing 27 days of good time credits, placing him in disciplinary segregation for 30 days, and forfeiting 180 days of visiting privileges and commissary privileges.

The 2005 Incident

In further opposition to the petition, Respondent provides the declaration of Daniel Schneider, who served as the DHO at Petitioner's 2005 disciplinary proceeding. The following is asserted in Schneider's declaration.

In February 2005, Petitioner was incarcerated at McKean. On February 9, 2005, inmates there discussed having a food strike and Petitioner was accused of encouraging them to participate in it. An investigation conducted by the Special Investigative Supervisor's Office concluded that Petitioner had met with other inmates in the recreation department and that he had explained to them how a food strike worked and how one had occurred at a different institution in 1995.

The disciplinary hearing was held on August 11, 2005. Petitioner did not present any documents or witnesses at the hearing. He admitted that he had met with the other inmates but claimed that he was trying to correct misinformation they had received about a policy change that had upset them. Petitioner also admitted that he had discussed the 1995 strike with the other inmates, but claimed that he was trying to convince them that the strike was not worth it.

The DHO found that Petitioner had encouraged a group demonstration. He based this decision in part on a finding that Petitioner was not a credible witness. Evidence was also presented of interviews with inmates who stated that Petitioner was one of the initiators of a food

strike and that he encouraged other inmates not to leave the recreation area if a planed meeting with the warden did not go as the inmates wanted.

## LEGAL STANDARD

Writ of habeas corpus relief extends to a person in custody under the authority of the United States.  See 28 U.S.C. § 2241.  While a federal prisoner who wishes to challenge the validity or constitutionality of his conviction must bring a petition for writ of habeas corpus under 28 U.S.C. § 2255, a petitioner challenging the manner, location, or conditions of that sentence's execution must bring a petition for writ of habeas corpus under 28 U.S.C. § 2241. See, e.g., Capaldi v. Pontesso, 135 F.3d 1122, 1123 (6th Cir. 1998); United States v. Tubwell, 37 F.3d 175, 177 (5th Cir. 1994); Kingsley v. Bureau of Prisons, 937 F.2d 26, 30 n.5 (2nd Cir. 1991); United States v. Jalili, 925 F.2d 889, 893-94 (6th Cir. 1991); Barden v. Keohane, 921 F.2d 476, 478-79 (3rd Cir. 1991); United States v. Hutchings, 835 F.2d 185, 186-87 (8th Cir. 1987); Brown v. United States, 610 F.2d 672, 677 (9th Cir. 1990).  A petitioner filing a petition for writ of habeas corpus under 28 U.S.C. § 2241 must file the petition in the judicial district of the petitioner's custodian.  Brown, 610 F.2d at 677.

## DISCUSSION

Petitioner now challenges both the 1995 sanctions and the 2005 sanctions.  Petitioner also challenges the calculation of his good time credits.  Respondent opposes the petition.

<u>1995 Sanctions</u>

With respect to the 1995 incident, Petitioner claims that he was denied due process because he was deprived of exculpatory evidence in the form of  housing records that would have shown that he was not in the area of the prison where the riot took place.

In Wolff v. McDonnell, 418 U.S. 539 (1974), the court set forth the elements of due process to which a prisoner is entitled in disciplinary hearings as follows: 1)  Written notice of the charges; 2) At least 24 hours between the time the prisoner receives written notice and the time of the hearing, so that prisoner may prepare his defense; 3)  A written statement of fact findings;  4)  The right to call witnesses and present documentary evidence where such is not unduly hazardous to institutional safety or correctional goals; and 5)  Legal assistance if the

4

accused is illiterate or the issues are complex. <u>Wolff</u>, 418 U.S. at 556.

As explained by Respondent, the DHO's findings show that Petitioner's actions took place before the rioting began and that Petitioner was punished because his actions helped bring about the rioting that occurred later. Therefore, Petitioner's argument raises a non-issue. It is simply irrelevant whether Petitioner was present when the rioting broke out.

<u>2005 Sanctions</u>

Petitioner contends in his petition that he was denied exculpatory evidence in the form of a surveillance video and that he was denied due process because prison authorities refused to review it. He does not explain how the video would have exonerated him. He also claims that prison authorities violated BOP policies regarding time limits from issuance of incident report to the final disposition.

In his declaration, made under penalty of perjury, Daniel Schneider states that Petitioner did not ask him to review any video surveillance. Schneider also explains that while Petitioner received his copy of the incident report on May 19, 2005, his hearing before the DHO was not held until August 11, 2005. Petitioner argues that this violates BOP policy and invalidates the sanctions that were imposed. This argument is without merit. Pursuant to 28 C.F.R. § 541.11(b), a discplinary hearing cannot be held without a <u>minimum</u> waiting period of 24 hours after the prisoner receives a copy of the incident report. This is to allow the prisoner to have time to prepare for the hearing. There is, however, no statutory limit on the time period from when the prisoner is given a copy of the incident report to the time of the disciplinary hearing. DHO hearings need only to be held within a reasonable amount of time, <u>Hewitt v. Helms</u>, 459 U.S. 460, 477 (1983), and the court finds that Petitioner has not demonstrated that the time period in this case was unreasonable. As set forth in the Schneider declaration, the 2005 disturbance almost doubled the number of inmates confined in the special housing unit, and processing all the incident reports took longer than usual.

In light of the above, court finds that Petitioner has failed to demonstrate any violation of his Constitutional rights in connection with his two disciplinary proceedings, particularly his due process rights as set forth in <u>Wolff v. McDonell</u>. The court must conclude, therefore, that his

1  contentions related to the two disciplinary proceedings provide no basis for habeas corpus relief.

2  Calculation of Good Time Credits

3      Petitioner contends that the Bureau of Prisons ("BOP") is incorrectly calculating his good
4  time credits and asks this court to order the BOP to change its method of calculation.
5  Respondent disputes this contention.

6      As Respondent explains, the awarding of good time credits for federal prisoners is
7  governed by 18 U.S.C. Section 3624(b)(1). That section states that a prisoner who is serving a
8  sentence of more than one year, but less than life, "may receive up to fifty-four days at the end of
9  each year of the prisoner's term of imprisonment, beginning at the end of the first year of the
10  term," subject to the BOP's determination that "during that year, the prisoner has displayed
11  exemplary compliance with institutional disciplinary regulations. 18 U.S.C. § 3624(b)(1).

12      The credit towards the prisoner's sentence is calculated at the end of each year. However,
13  as Respondent indicates, when the prisoner approaches the end of his sentence, the calculation
14  must be made before the end of the year and must be prorated. Section 3624 specifies that
15  "credit for the last year of portion of a year of the term of imprisonment shall be prorated and
16  credited within the last six weeks of the sentence." The question that arises in this situation is
17  whether the phrase "term of imprisonment" means the length of the actual sentence that was
18  imposed by the district court or the amount of time that the prisoner actually serves. The BOP
19  has implemented a regulation that adopts the amount of time actually served by a prisoner as the
20  basis for the proration. 28 C.F.R. § 523.20.

21      Petitioner argues that his good time credits should be based, not on the number of days
22  actually served but on the number of days to which he is sentenced. Petitioner estimates that the
23  BOP's method of calculating good time credits has deprived him of approximately 7 days worth
24  of credit each year.

25      The Court of Appeals for the Ninth Circuit has rejected the exact argument made by
26  Petitioner in Pacheco-Camacho v. Hood, 272 F.3d 1266 (9th Cir. 2001). The court found that the
27  BOT regulation was entitled to full deference under Chevron U.S.A. Inc. v. Natural Resources
28  Defense Council, Inc., 467 U.S. 837 (1984), that section 3624(b) is ambiguous, that the

6

1  legislative history of the section does not remove that ambiguity, and that the BOP regulation is
2  "based on a permissible construction of the statute." 467 U.S. at 843; 272 F.3d at 1269-71.
3  Accordingly, this claim provides no basis for habeas corpus relief and must be denied.

6  Based on the foregoing, IT IS HEREBY RECOMMENDED that this petition for writ of
7  habeas corpus be DENIED and that judgment be entered for Respondent.

9  These Findings and Recommendation are submitted to the assigned United States District
10 Court Judge, pursuant to the provisions of 28 U.S.C. section 636 (b)(1)(B) and Rule 72-304 of
11 the Local Rules of Practice for the United States District Court, Eastern District of California.
12 Within thirty (30) days after being served with a copy, any party may file written objections with
13 the court and serve a copy on all parties. Such a document should be captioned "Objections to
14 Magistrate Judge's Findings and Recommendation." Replies to the objections shall be served
15 and filed within ten (10) court days (plus three days if served by mail) after service of the
16 objections. The court will then review the Magistrate Judge's ruling pursuant to 28 U.S.C. § 636
17 (b)(1)(C). The parties are advised that failure to file objections within the specified time may
18 waive the right to appeal the District Court's order. Martinez v. Ylst, 951 F.2d 1153 (9th Cir.
19 1991).
20 IT IS SO ORDERED.
21 **Dated:   July 7, 2008**              /s/ **William M. Wunderlich**
                                          UNITED STATES MAGISTRATE JUDGE